556 P.2d 366

**MERCHANTS, INC., et al., Plaintiffs and Respondents,**

**v.**

**INTERMOUNTAIN INDUSTRIES, INC., an Idaho Corporation, et al., Defendants and Appellants.**

**INTERMOUNTAIN INDUSTRIES, INC., Counter-Plaintiff and Cross-Party Plaintiff and Appellant,**

**v.**

**POCATELLO INDUSTRIAL PARK COMPANY, a partnership, and Bannock County, Idaho, a political subdivision, Cross-Defendants and Respondents.**

No. 12084.

Supreme Court of Idaho.

Nov. 18, 1976.

Max F. Parrish, Pocatello, for cross-party plaintiff and appellant.

Gerald W. Olson, Pocatello, for cross-defendant and respondent.

No appearance by any other attorneys or parties.

PER CURIAM.

This action began with a complaint filed by Merchants, Inc., (Merchants) in October of 1971. Approximately five years and 185 pages of clerk's transcript later, the

original action remains to be tried, and is apparently held in abeyance pending the disposition of the appeal we now consider.

In June of 1969, Merchants conditionally sold certain personal property to Drug Mart, Inc., (Drug Mart) for approximately $50,000.00, the purchasers of record being Drug Mart and its owners, Charles J. and Ralene M. Nielsen, individually. Requisite UCC filings were made at both the Bannock County Recorder's office and the Office of the Secretary of State in Boise. The account subsequently became delinquent and, by agreement of all parties to the transaction, Merchants picked up the personal property and stored it with Pocatello Industrial Park Company (PIPCo). Thereafter, by virtue of an execution issued in another action on behalf of the judgment creditors of Drug Mart, the personal property was sold at a sheriff's sale. At this point, the appellant, Intermountain Industries, Inc., (Intermountain) becomes involved by reason of buying the personalty exposed at sale for its highest bid, which was $467.50.

Thereafter, all of the parties to the 1969 purchase money security interest transaction, to-wit: Merchants, Drug Mart, and the two Nielsens, joined as co-plaintiffs in bringing the original action, naming as defendants the ten judgment creditors who had had the personalty seized under execution and put up for sale, and Intermountain who, as execution sale purchaser, remains in possession of the goods. In March of 1972, the trial court granted partial summary judgment, determining as a single issue that Merchants had complied with UCC requirements with respect to the filing of financing statements.

Following this determination of the validity of the filings, Intermountain, with leave of court, in July of 1972, filed a counterclaim and cross-complaint, alleging a separate claim against Merchants, another claim against Drug Mart and the Nielsens individually, another claim against Bannock County (whose faulty recording system allegedly caused the execution sale), and yet another claim against PIP-Co, against whom Intermountain charges liability for allowing the sale to take place while knowing of Merchant's security interest. Intermountain sought: $10,000.00 damages or such amount as to be further determined on each of the four claims; set-off against Merchants for whatever Merchants might get against it; and indemnity over from Bannock County and from PIP'Co for any amount it might become adjudged as owing to Merchants.

In November, 1972, PIPCo challenged the sufficiency of Intermountain's claim against it by a motion to dismiss, and it is from an order entered in July, 1975, granting the motion to dismiss that this appeal has been brought. Meanwhile, from the rather voluminous record, it appears that Bannock County's similar motion for summary judgment has been denied, that Merchants withdrew a summary judgment motion which it had filed, and other than the pendency of this appeal, the case is ready for trial on the issues.

At the outset, we question whether the order granting the motion is appealable, having in mind I.R.C.P. 54(b), I.C. § 13–201, and our recent decision in *Southland Produce Company v. Belson,* 96 Idaho 776, 536 P.2d 1126 (1975). By our count, the case under review involves five separate claims and sixteen parties. Clearly, then, it is both a multi-claim and multi-party action. What goes to make a "final judgment" in such an action is governed, as to multi-claims, by I.R.C.P. 54(b):

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, *or third-party claim,* the court may direct the entry of a final judgment upon one or more but less than all of the claims *only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.* In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates less than all the

claims shall not terminate the action as to any of the claims, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims. (Emphasis added.)

We hold that the order appealed from (simply an order granting the motion) does not meet the twin demands of Rule 54(b) and is not therefore a "final judgment" from which an appeal can be taken at this time. The certification required by Rule 54(b) is entirely absent. Entry of judgment was not directed, and there is not an express determination finding no just reason for delaying entry of judgment. Nor is it suggested that either party requested certification. PIPCo might have done so in order to activate the running of appeal time. Intermountain might have done so in order to lay a foundation for its appeal.

■ This certification, it must be emphasized, is not a mere technical nicety. If not strictly observed, litigants are left in doubt as to precisely when a judgment does become appealable—an intolerable situation, given the fact that the prescribed time within which an appeal must be brought begins on the date when an appealable decision is rendered. As we said in *Gerry v. Johnston,* 85 Idaho 226, 378 P. 2d 198 (1963):

> "Under our rules and in the furtherance of orderly administration of justice it is necessary that the trial court make a specific finding that there is no just reason for delay and thereafter expressly direct entry of judgment. Failure to observe this rule precludes the judgment from being final." 85 Idaho at 230, 378 P.2d at 201.

*See also, Viani v. Aetna Insurance Company,* 95 Idaho 22, 501 P.2d 706 (1972); *Rawlings v. Layne & Bowler Pump Co.,* 93 Idaho 496, 465 P.2d 107 (1970).

The policy issues at stake were elucidated in *Southland Produce Company v. Belson,* supra. We observed there that Rule 54(b) was adopted to overcome the "single judicial unit theory" which seriously inconvenienced persons involved in multi-party or multiple claim actions by forcing them to await the adjudication of "the whole case and every matter in controversy in it" before being allowed to appeal. This is the "affirmative aspect" of Rule 54(b), which was designed to liberalize the appeals process.

But the Rule's "negative aspect"—with its two express demands for a valid certification—is equally important. The rights of a litigant to a speedy appeal and to a clear-cut indication of when his right to appeal begins are not the sole policy considerations at stake. The court must also be concerned lest, as was said in *Southland Produce Company v. Belson,* supra,

> ". . . permitting an appeal from a partial summary judgment might produce several appeals some of which might be unnecessary." 96 Idaho 776, 777, 536 P. 2d 1126, 1127.

Here the point is particularly appropriate. While Intermountain seeks appellate review of the trial court ruling that it failed to state a claim for relief against PIPCo, the rights of fifteen parties on four other claims remain unadjudicated for over eighteen months. Had the underlying case been permitted to go forward, by now the issue before us might well have become moot. It is for this reason that some courts not only require that the conclusory language of 54(b) be met, but also insist on a reasoned statement substantiating the lower court's certification, so that this decision, too, can be reviewed for abuse of discretion. *Gumer v. Shearson, Hammill & Co., Inc.,* 516 F.2d 283 (2d Cir.1975); *Allis-Chalmers Corp. v. Philadelphia Electric Co.,* 521 F.2d 360, (3d Cir.1975). *See* also, "Entry of Final Judgment under Rule 54(b) of the Federal Rules of Civil Procedure: the Third Circuit Imposes a Requirement of a Statement of Reasons," 56 B.U.L.Rev. 579–599.

■ Intermountain is in no way prejudiced by our holding. Since the court order granting the motion to dismiss its

third-party complaint against PIPCo is not a final judgment, it remains "subject to revision at any time before the entry of judgment adjudicating all the claims." I.R.C.P. 54(b).

Appeal dismissed without prejudice and without costs.